**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JOHN GRIFFIN, | : | CIVIL NO. 1:25-cv-01677 |
| | : | |
| Plaintiff, | : | (Magistrate Judge Schwab) |
| | : | |
| v. | : | |
| | : | |
| | : | |
| FRANK BISIGNANO, | : | |
| Commissioner of Social Security, | : | |
| | : | |
| Defendant. | : | |

**<u>MEMORANDUM OPINION</u>**

## I. Introduction.

In this social security action, Plaintiff John Griffin ("Griffin") seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his claims for disability insurance benefits under Title II of the Social Security Act. We have jurisdiction under 42 U.S.C. § 405(g). For the reasons set forth below, we will vacate the Commissioner's decision and remand the case to the Commissioner for further proceedings.

**II. Background and Procedural History.**

We refer to the transcript provided by the Commissioner. *See docs. 6-1* to *6-7*.[1] In 2023, Griffin protectively filed[2] an application for disability insurance benefits, alleging that he has been disabled since March 27, 2023. *Admin Tr.* 178–80. After his claim at the initial and reconsideration levels of administrative review were denied, Griffin requested an administrative hearing. *Id.* at 77–80, 87–91. On June 24, 2024, Griffin—who was represented by counsel—as well as a vocational expert testified at a telephonic hearing before Administrate Law Judge Andrew Emerson (the "ALJ"). *Id.* at 33–57. On August 29, 2024, the ALJ denied Griffin's claim for benefits. *Id.* at 14–27. This makes the ALJ's decision the final decision of the Commissioner subject to judicial review by this Court.

On September 8, 2025, Griffin, represented by counsel, began this action by filing a complaint seeking review of the Commissioner's decision denying his claim. *See doc. 1*. He requests that the court reverse and remand the Commissioner's decision under the fourth sentence of 42 U.S.C. § 405(g). *Id.* ¶ 2

[1] Because the facts of this case are well known to the parties, we do not repeat them here in detail. Instead, we recite only those facts that bear on Griffin's claims.

[2] "Protective filing is a term for the first time an individual contacts the Social Security Administration to file a claim for benefits." *Stitzel v. Berryhill*, No. 3:16-CV-0391, 2017 WL 5559918, at *1 n.3 (M.D. Pa. Nov. 9, 2017). "A protective filing date allows an individual to have an earlier application date than the date the application is actually signed." *Id.*

(Wherefore Clause). He also seeks a judgment for "such relief" as the court deems proper, including costs and attorney's fees. *Id.*

The parties consented to proceed before a magistrate judge pursuant to 28 U.S.C. § 636(c), and the case was referred to the undersigned. *Doc. 5*. The Commissioner filed a certified transcript of the administrative proceedings, which constitutes the entirety of his answer. *See doc. 6*. The parties filed briefs (*see docs. 7, 9, 12*) and this matter is ripe for decision.

## III. Legal Standards.

### A. Substantial Evidence Review—the Role of This Court.

When reviewing the Commissioner's final decision denying a claimant's application for benefits, "the court has plenary review of all legal issues decided by the Commissioner." *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). But the court's review of the Commissioner's factual findings is limited to whether substantial evidence supports those findings. *See* 42 U.S.C. § 405(g); *Biestek v. Berryhill*, 587 U.S. 97, 99 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Biestek*, 587 U.S. at 103. Substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

Substantial evidence "is less than a preponderance of the evidence but more than a mere scintilla." *Jesurum v. Sec'y of U.S. Dep't of Health & Hum. Servs.*, 48 F.3d 114, 117 (3d Cir. 1995). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's] finding from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003).

The question before this court, therefore, is not whether Griffin is disabled, but whether substantial evidence supports the Commissioner's finding that he is not disabled and whether the Commissioner correctly applied the relevant law.

**B. Initial Burdens of Proof, Persuasion, and Articulation.**

To receive benefits under Title II of the Social Security Act, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected

to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful work that exists in the national economy. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a).

To receive disability insurance benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. § 423(a); 20 C.F.R. § 404.131(a).[3]

The ALJ follows a five-step sequential-evaluation process to determine whether a claimant is disabled. 20 C.F.R. § 404.1520(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment;

[3] "Disability insurance benefits are paid to an individual if that individual is disabled and 'insured,' that is, the individual has worked long enough and paid social security taxes." *Jury v. Colvin*, No. 3:12-CV-2002, 2014 WL 1028439, at *1 n.5 (M.D. Pa. Mar. 14, 2014) (citing 42 U.S.C. §§ 415(a), 416(i)(1)). "The last date that an individual meets the requirements of being insured is commonly referred to as the 'date last insured.'" *Id.* (citing 42 U.S.C. § 416(i)(2)). Here, the ALJ determined that Griffin met the insured-status requirements through December 31, 2026. *Admin. Tr.* at 20.

(4) whether the claimant is able to do his or her past relevant work; and
(5) whether the claimant is able to do any other work, considering his or her age, education, work experience, and residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(a)(4)(i)–(v).

The ALJ must also assess a claimant's RFC at step four. *Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 198 n.2 (3d Cir. 2019). The RFC is "'that which an individual is still able to do despite the limitations caused by his or her impairment(s).'" *Burnett v Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 n.1 (3d Cir. 1999)); *see also* 20 C.F.R. § 404.1545(a)(1). In making this assessment, the ALJ considers all the claimant's medically determinable impairments, including any non-severe impairment identified by the ALJ at step two of his or her analysis. 20 C.F.R. § 404.1545(a)(2).

"The claimant bears the burden of proof at steps one through four" of the sequential-evaluation process. *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010). But at step five, "the burden of production shifts to the Commissioner, who must . . . show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity." *Fargnoli v. Massanari*, 247 F.3d 34, 39 (3d Cir. 2001).

The ALJ's disability determination must also meet certain basic substantive requisites. Most significantly, the ALJ must provide "a clear and satisfactory explication of the basis on which" his or her decision rests. *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). "The ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F. 3d 429, 433 (3d Cir. 1999). The "ALJ may not reject pertinent or probative evidence without explanation." *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 204 (3d Cir. 2008). Otherwise, "'the reviewing court cannot tell if significant probative evidence was not credited or simply ignored.'" *Burnett*, 220 F.3d at 121 (quoting *Cotter*, 642 F.2d at 705).

## IV. The ALJ's Decision.

On August 29, 2024, the ALJ denied Griffin's claim for benefits. *Admin. Tr.* at 14–27. He proceeded through the five-step sequential-evaluation process.

### A. Step One.

At step one of the sequential-evaluation process, the ALJ found that Griffin had not engaged in substantial gainful activity since his alleged onset date of March 27, 2023. *Id.* at 20.

**B. Step Two.**

At step two of the sequential-evaluation process, the ALJ found that Griffin had the following severe impairments: "hypertension/cardiomyopathy; blindness in the left eye/left central retinal artery occlusion/glaucoma/bilateral dry eye syndrome/bilateral cataracts."[4] *Id.* The ALJ also found that Griffin had several non-severe medically determinable impairments. *Id.* 20–21. As to Griffin's mental impairment, the ALJ considered the four broad areas of mental functioning set forth in the disability regulations for evaluating mental disorders and in the listings, known as the paragraph B criteria, and he determined that Griffin had no limitations in each area. *Id.* The ALJ recognized that the paragraph B criteria are not an RFC; rather, they "are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process[,]" and the RFC "assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment." *Id.* at 21. And he asserted the RFC that follows "reflects the degree of limitation" he "has found in the 'paragraph B' mental function analysis." *Id.*

[4] For readability purposes, here—and elsewhere—when citing or quoting the ALJ's decision, we omit the ALJ's citations to the record.

**C. Step Three.**

At step three of the sequential-evaluation process, the ALJ found that Griffin did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id*. at 21–22. Specifically, the ALJ considered Listings 2.02, 2.03, and 2.04 in connection with Griffin's visual impairments. *Id.* at 21. The ALJ also considered Listing 4.00H(1) in connection with Griffin's cardiac impairments, hypertension, and cardiomyopathy. *Id.* at 21–22.

**D. The RFC.**

The ALJ then determined that Griffin had the RFC to perform medium work[5] with some limitations. *Id.* He concluded that Griffin can "frequently climb ramps and stairs, balance, stoop, kneel, crouch, and crawl;" can "never climb ladders, ropes, or scaffolds;" he "must avoid concentrated exposure to excessive vibration;" he "must avoid moderate exposure to hazardous moving machinery and unprotected heights;" and he "is limited to occupations requiring only monocular vision." *Id.*

---

[5] *See* 20 C.F.R. § 416.967(c) ("Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work.").

In making this RFC assessment, the ALJ considered Griffin's testimony and assertions regarding his limitations. *Id.* at 22, 24. The ALJ concluded that although Griffin's "medically determinable impairments could reasonably be expected to cause the alleged symptoms[,]" his "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." *Id.* at 22. The ALJ also considered Griffin's medical records. *Id.* at 23. And he considered Griffin's activities of daily living noting that he is able to live independently and care for his own personal needs, cooks and does household chores, does dishes by hand and does laundry, takes public transportation, and goes fishing for up to 12 hours. *Id.* at 23–24. Although he acknowledged that Griffin alleges a "reduced exertional ability and difficulty seeing," according to the ALJ, Griffin's "activities of daily living are consistent with his ability to perform a reduced range of medium work" *Id.* at 23.

The ALJ further considered the opinions in the record. *Id*. at 24–25. The ALJ considered the opinions of the state agency medical consultants, who "found insufficient evidence to establish a residual functional capacity." *Id.* at 24. The ALJ noted that the consultants "did not have access to the most recent medical evidence[,]" which is "consistent with severe visual impairments." *Id.* But the ALJ

independently found that totality of the evidence was sufficient to establish an RFC:

> when he takes his blood pressure medication, the claimant's blood pressure is within normal limits. Yet only medium work is possible due to a mild decrease in his left ventricle ejection fraction (LVEF). Vision/hazard restrictions are assigned due to left eye blindness. Avoidance of excessive vibration is necessary due to left central retinal artery occlusion. Finally[,] it appears that the claimant's mild right eye vision loss can be normalized with correction.

*Id.* at 25. The ALJ concluded that the above RFC is "supported by the medical evidence." *Id.*

**E. Step Four.**

At step four of the sequential-evaluation process, the ALJ found that Griffin was capable of performing past relevant work as a janitor and floor technician. *Id.* The ALJ went on to state that "[t]his work does not require the performance of work-related activities precluded by the claimant's residual functional capacity." *Id.*

**F. Step Five.**

Finally, the ALJ determined that after considering "the claimant's age, education, work experience, and residual functional capacity," there were jobs that existed in significant numbers in the national economy he was capable of

performing. *Id.* at 26. The vocational expert testified that a hypothetical individual with Griffin's age, education, work experience, and RFC would have been capable of performing the requirements of representative occupations such as:

1. Dishwasher (DOT 318.687-010); 80,000 jobs nationally;

2. Warehouse worker (DOT 922.687-058); 100,000 jobs nationally; and as a

3. Packer (DOT 920.587-018); 70,000 jobs nationally.

*Id.* The ALJ found that the expert's testimony was "consistent with the information contained in the Directory of Occupational Titles." *Id.* In sum, the ALJ concluded that Griffin was not disabled from March 27, 2023, through the date of his decision on August 29, 2024. *Id.* Thus, he denied Griffin's claim for benefits. *Id.*

**V. Discussion.**

Griffin presents a single claim. He argues that the ALJ failed to develop the record "despite admitting that the evidence was insufficient." *Doc. 7* at 2. Specifically, Griffin contends that the RFC is not supported by substantial evidence because the record contained no medical opinions. *Id.* at 4. Because this claim involves the ALJ's RFC assessment, before addressing the merit of this claim, we set forth general standards regarding the RFC assessment.

**A. The RFC.**

"The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011). The RFC is '"that which an individual is still able to do despite the limitations caused by his or her impairment(s).'" *Burnett*, 220 F.3d at 121 (quoting *Hartranft*, 181 F.3d at 359 n.1). In assessing a claimant's RFC, the ALJ must consider all the evidence of record. *Burnett*, 220 F.3d at 121. "When a conflict in the evidence exists, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'" *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) (quoting *Mason*, 994 F.2d at 1066). The court's "review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence." *Wilder v. Kijakazi*, 1:20-CV-492, 2021 WL 4145056, at *6 (M.D. Pa. Sept. 9, 2021); *see also Burns v. Barnhart*, 312 F.3d 113, 129 (3d Cir. 2002) ("We examine the ALJ's conclusions as to [the claimant's] residual functional capacity with the deference required of the substantial evidence standard of review.").

Further, "[s]urveying the medical evidence to craft an RFC is part of the ALJ's duties." *Titterington v. Barnhart*, 174 F. App'x 6, 11 (3d Cir. 2006). And "[i]n evaluating medical reports, the ALJ is free to choose the medical opinion of

one doctor over that of another." *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 505 (3d Cir. 2009). In fact, in evaluating the medical opinion evidence of record, "the ALJ is not only entitled but required to choose between" conflicting medical opinions. *Cotter,* 642 F.2d at 705.

**B. Substantial Evidence Does Not Support the RFC Assessment.**

Griffin argues that the ALJ erred in determining that Griffin has the RFC to perform medium work with some limitations. He argues that the ALJ's duty to develop the record was triggered when "all reviewing medical sources agreed that there was insufficient evidence." *Doc. 7* at 3. Accordingly, Griffin contends that the RFC was based on "nothing more than the ALJ's lay interpretation of the medical evidence." *Id.* at 4.

In response, the Commissioner does not dispute that no medical opinion evidence exists in this case; rather, the Commissioner argues that the duty to develop the record rested with Griffin. *Doc. 9* at 6–8. The Commissioner further argues that the ALJ did not need a medical opinion to formulate his RFC finding. *Doc. 9* at 10. He maintains that there is no legal requirement that a physician make any particular finding that the ALJ must adopt when formulating the RFC; thus, the ALJ is not required to seek a separate medical opinion. *Id.* at 9–10. (citing *Titterington*, 174 F. App'x at 11). The Commissioner reasons that although the

RFC is not based on medical opinion evidence, the ALJ independently formulated Griffin's RFC based upon careful consideration of the entire record and discussed substantial evidentiary support for his RFC finding.[6] *Id.* at 10–12.

"Social Security proceedings are inquisitorial rather than adversarial." *Sims v. Apfel*, 530 U.S. 103, 110–11 (2000). "[T]he special nature of proceedings for disability benefits dictates extra care on the part of the agency in developing an administrative record and in explicitly weighing all evidence." *Dobrowolsky v.*

---

[6] The Commissioner further argues that "[t]his Circuit has recognized that the failure to raise a claim at any point in the administrative proceeding waives it for purposes of federal court review." *Doc. 9* at 9 (citing *Ginsburg v. Richardson*, 436 F.3d 1146, 1152 (3d Cir. 1971); *Krysztoforski v. Chater*, 55 F.3d 857, 860 (3d Cir. 1995)). But the Commissioner's reliance on *Ginsburg* and *Krysztoforski* is misplaced. In *Ginsburg*, the claimant "failed to follow the 'proper procedure' provided by agency regulations for seeking recusal, and that relief, had she followed the procedure, was one the ALJ was capable of providing." *Cirko on behalf of Cirko v. Comm'r of Soc. Sec.*, 948 F.3d 148, 158 (3d Cir. 2020). Here, there are no social security regulations requiring issue exhaustion prior to review in the district court. *Culclasure v. Comm'r of Soc. Sec. Admin.*, 375 F. Supp. 3d 559, 568 (E.D. Pa. 2019). And in *Krysztoforski*, the Court declined to entertain an issue "not raised before the ALJ *or* the district court." *Krysztoforski*, 55 F.3d at 860 (emphasis added). Indeed, a "claimant need not exhaust issues in a request for review by the Appeals Council." *Culclasure*, 375 F. Supp. 3d at 568 (citing *Sims v. Apfel*, 530 U.S. 103 (2000)). Accordingly, we find the Commissioner's waiver argument is without merit. *See Burnett*, 220 F.3d at 125 (finding the claimant's failure to raise an issue during the administrative proceedings did not preclude review of the issue on appeal); *Hund v. Berryhill*, No. CV 16-00231, 2017 WL 2569990, at *17 (E.D. Pa. May 23, 2017), *report and recommendation adopted sub nom. Hund v. Comm'r of Soc. Sec.*, No. CV 16-231, 2017 WL 2547238 (E.D. Pa. June 13, 2017) ("[A] consequence of the non-adversarial nature of Social Security proceedings is that a party does not forfeit an issue that he or she fails to raise below.").

*Califano*, 606 F.2d 403, 406–07 (3d Cir. 1979) (footnote omitted). The ALJ must play an "active role" in this regard. *Ventura v. Shalala*, 55 F.3d 900, 902 (3d Cir. 1995). He or she has "a duty to develop a full and fair record[,]" and "must secure relevant information regarding a claimant's entitlement to social security benefits." *Id.* When the claimant is unrepresented, the ALJ must "assume a more active role[.]" *Dobrowolsky*, 606 F.2d at 407. Nevertheless, the duty to develop a full and fair record "applies regardless of whether a claimant is pro se or represented because of the non-adversarial nature of Social Security disability benefit proceedings." *West v. Kijakazi*, No. 3:21-CV-01350, 2023 WL 2742746, at *4 (M.D. Pa. Mar. 31, 2023) (citing *Boone v. Barnhart*, 353 F.3d 203, 208 n.11 (3d Cir. 2003)).

The ALJ's duty to develop the record "does not relieve the claimant of her burden of proof[.]" *Guzman v. Berryhill*, No. 3:17-CV-1222, 2018 WL 746385, at *8 (M.D. Pa. Feb. 7, 2018) (citing *Hess v. Sec'y of Health, Ed. & Welfare*, 497 F.2d 837, 840 (3d Cir. 1974)). But "[i]f the record is inadequate for proper evaluation of the evidence, the ALJ's duty to develop the record is triggered." *Id.* "Ultimately, the question is whether the administrative record has been adequately developed under the circumstances to provide a substantial basis for the decision." *Id.* (internal quotation marks and citations omitted).

While the court recognizes that the RFC is an administrative finding, rather than a medical finding, "[t]here is an undeniable medical aspect to an RFC determination." *Barnett v. Berryhill*, No. 3:18-CV-637, 2018 WL 7550259, at *4 (M.D. Pa. Dec. 10, 2018). In pertinent part, the RFC entails an assessment of what work the claimant can do given the physical limitations that the claimant experiences. *Id.*; *Nofsker v. Saul*, 3:20-CV-00193, 2021 WL 103661, at *9–10 (M.D. Pa. Jan. 12, 2021). Therefore, "rarely can a decision be made regarding [a] claimant's RFC without an assessment from a physician regarding [the] functional abilities of [a] claimant." *See Donat v. Berryhill*, No. 17-5096, 2018 WL 3186953, at *4 (E.D. Pa. Jun. 28, 2018); *see also Gormont v. Astrue*, No. 11-2145, 2013 WL 791455, at *7 (M.D. Pa. Mar. 4, 2013); *Doak v. Heckler*, 790 F.2d 26, 29 (3d Cir. 1986) ("No physician suggested that the activity [the claimant] could perform was consistent with the definition of light work set forth in the regulations, and therefore the ALJ's conclusion that he could is not supported by substantial evidence"). Further, while "an ALJ is entitled to resolve conflicts in the evidence and determines the ultimate question of disability, as a lay person, the ALJ is not permitted to interpret raw medical data when evaluating a claimant's functional capacity." *See Donat*, 2018 WL 3186953, at *4; *see also Doak*, 790 F.2d at 29; 20 C.F.R. § 404.1545.

Guided by these legal tenets, the court finds that the ALJ's RFC determination is not supported by substantial evidence. In determining that Griffin had the RFC to perform medium work with some limitations to address his medical impairments, the ALJ considered the opinions of the state agency medical consultants. *Admin. Tr.* at 24–25. These consultants were the only two physicians of record and provided no specific work-related functional limitations due to insufficient evidence. *See id.* at 58–62, 64–68. And the ALJ noted that the consultants "did not have access to the most recent medical evidence." *Id.* at 24. Accordingly, the ALJ relied on no medical opinion regarding Griffin's functional capacity to perform work.

The court finds this problematic, as it appears that the ALJ based the RFC upon his own lay interpretation of the medical evidence. *See Falu v. Kijakazi*, No. 3:21-CV-2061, 2023 WL 6276708, at *4 n.4 (M.D. Pa. Sept. 26, 2023) ("Without any medical opinion instructing the ALJ on how to interpret the medical evidence in the record, the ALJ is left to his own lay impression of how the medical evidence should be interpreted.); *Miller v. Saul*, No. 4:18-CV-02012, 2020 WL 1531298, at *3 (M.D. Pa. Mar. 31, 2020) ("Where an ALJ rejects all available medical opinions, courts will generally conclude 'that the ALJ impermissibly relied on speculation or lay interpretation of medical evidence to reach' an RFC determination." (quoting *McKean v. Colvin*, 150 F. Supp. 3d 406, 418 (M.D. Pa.

2015))). As mentioned above, as a lay person, the ALJ is not permitted to interpret raw medical data when evaluating a claimant's functional capacity. *See Donat*, 2018 WL 3186953, at *4*; see also Glahn v. Berryhill*, No. 3:16-CV-592, 2018 WL 3233367, at *14 (M.D. Pa. Mar. 29, 2018); *Doak*, 790 F.2d at 29. As often stated, "Judges, including administrative law judges of the Social Security Administration, must be careful not to succumb to the temptation to play doctor" because "lay intuitions about medical phenomena are often wrong." *See Ralph v. Colvin*, No. 1:14-CV-01230, 2015 WL 2213576, at *16 (M.D. Pa. May 11, 2015) (quoting *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990)); *see also Glahn*, 2018 WL 3233367, at *14.

No physician suggested that the activity Griffin could perform was consistent with performing medium work with some limitations, and therefore the ALJ's conclusion that he could is not supported by substantial evidence. Therefore, because the ALJ improperly relied on his own lay opinion in crafting the RFC, we find that the ALJ's RFC assessment is not supported by substantial evidence. Accordingly, the Commissioner's decision to deny Griffin disability benefits will be vacated and the case will be remanded for further consideration.

**VI. Conclusion.**

For the foregoing reasons, we will vacate the decision of the Commissioner and remand the case to the Commissioner for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g). An appropriate order follows.

***S/Susan E. Schwab***
Susan E. Schwab
United States Magistrate Judge